This products liability case tried in the Circuit Court of Lawrence County, Mississippi, resulted in a verdict and judgment for $8,600 in favor of Waddell Pevey. The suit was brought by Pevey to recover damages for the death of some of his cattle which allegedly resulted from being dipped in a solution manufactured by William Cooper Nephews, Inc.
The controlling issue is whether the verdict is against the overwhelming weight of the evidence.
Appellee, desiring to dip his cattle for parasites (ticks, lice, etc.) employed his friend, Givens, to purchase several containers of the dip concentrate at $11.50 per container. Givens purchased the solution from the Branding Chute in Jackson, Mississippi, and delivered it to appellee. Appellee obtained the expert assistance of Pullen, the County Agent for Lawrence County, who, relying on successive test kit results rather than instructions on the label, mixed and diluted the dipping solution with water in a vat through which the cattle were made to pass. By repeatedly adding dip concentrate, stirring, and testing, *Page 408 
Pullen said he obtained the recommended proportion or strength of the diluted solution in the vat.
The cattle were dipped on the afternoon of April 10, 1965, and on the following day a number of them were dead. Others were suffering from problems which developed subsequent to the dipping.
Dr. C.W. Price, a veterinarian employed by appellee, took specimens from stomachs of several of the cattle. He also (assisted by Pullen) took samples of the diluted dip which was used from the vat and caused the specimens and samples to be analyzed at Mississippi State University. Other tests were made on samples of the dip solution.
It is argued on behalf of appellant that it should have been granted a directed verdict because the appellee introduced no evidence of any defect in the cattle dip concentrate manufactured by appellant, and that the verdict is against the overwhelming weight of the evidence.
Though Pevey's pleadings were cast in the nature of a suit for breach of implied warranty and negligence, his case was submitted to the jury on the theory of strict liability in tort as shown by jury instructions granted at his request. State Stove Mfg. Co.et al. v. Hodges, 189 So.2d 113 (Miss. 1966) is the landmark decision in this state, which adopted the theory of strict liability in tort. This Court said in State Stove:
 "The extent of strict liability of a manufacturer for harm caused by his product is not that of an insurer. It is strict in the sense that there is no need to prove that the manufacturer was negligent. If the article left the defendant's control in a dangerously unsafe condition, or was not reasonably safe, or was unsafe for its intended use, the defendant is liable whether or not he was at fault in creating that condition or in failing to discover and eliminate it. Ordinarily the phrase `defective condition' means that the article has something wrong with it. . . ."
 (189 So.2d at 120-21.) (Emphasis added.)
As said by this Court in Ford Motor Company v. Matthews,291 So.2d 169 (Miss. 1974) in discussing the elements of a strict products liability case, "it is first necessary to prove" that the product left the manufacturer in a defective condition which "rendered it unreasonably dangerous." Next, the element of causation, i.e., that the defect was the proximate cause of the injury, must be proven. Causation may be proven by direct evidence but this type of proof is not essential. As we said inFord Motor Company v. Matthews, supra, the burden of proof to establish causation may be met by showing sufficient facts to allow a jury to infer defective quality and that such defective quality was a substantial element in producing the injury complained of.
The more recent case (involving a defective ketchup bottle) ofEarly-Gary, Inc. v. Walters, 294 So.2d 181 (Miss. 1974), dealt with strict liability in tort as defined in Section 402A Second Restatement of Torts. That case restated the rule that:
 "Before recovery can be had under this Section three elements must be established by the proof:
 (1) that the plaintiff was injured by the product, (2) that the injury resulted from a defect in the product which rendered it unreasonably dangerous, and (3) that the defect existed at the time it left the hands of the manufacturer." (294 So.2d at 186.)
In Masonite Corporation v. Hill, 170 Miss. 158, 154 So. 295
(1934), this Court recognized the desirability of proving facts capable of direct proof by chemical analysis if such proof is reasonably available to the party who has the burden of proof. Circumstantial evidence may be used to prove the defect in cases where *Page 409 
there is no other way to establish it. Without deciding whether the lower court erred when it failed to grant a directed verdict for the appellant when the appellee rested, we do feel that there is merit to the argument that the verdict is contrary to the weight of the evidence.
In the present case scientific analyses of the product said to be defective were made. After carefully studying the testimony regarding chemical analyses performed by experts on the product in the light most favorable to the appellee, one cannot help but reach the conclusion that each analysis proved overwhelmingly that there was no defect in the product in question. The record also shows that experts examined samples of the diluted dip and stomach specimens. Results of the examinations (introduced by appellant after appellee rested) showed not only that the product was not defective, but also that it was safe for use if used according to instructions on the label.
To make out a case based on the theory of strict liability, the burden of proof was upon the appellee to prove the existence of a defect in the product. Of the several experts who tested the dip solution, not one of them said that there was any defect or anything wrong with the product. Obviously the dip solution contained arsenic and the cows died from arsenic poisoning. Admitted into evidence was the report of Dr. Ethridge which stated that he found "quite a bit of arsenic in the cows' stomach contents." Quite significantly, this same expert stated that this "proved beyond any reasonable shadow of a doubt that the cows or calves in question are bound to have ingested some of this material through the mouth." Though the directions on the label of the dip made it clear that the solution was to be used for dipping, that it was poisonous, and might be fatal if swallowed, the appellee admitted on cross-examination as to whether the cattle drank any of it, "I don't know. I just say that product killed them."
Mere proof of damage following its use was not sufficient to establish liability, especially when the testimony adduced at the trial clearly and convincingly negated the contention that the dip was defective and unnecessarily dangerous.
The appellee argues that direct proof (in addition to circumstantial evidence) of a defect in the product is in the record. On cross-examination of Dr. Minyard, appellee's counsel placed into evidence the written report of Dr. Ethridge who did not testify in person during the trial. Dr. Ethridge's report stated, among other things, that "there might have been atrace" (emphasis added) of arsenic retained on the filters used by analysts (Tupper and Patterson) in making tests of samples submitted to them. It is noted that in his report Dr. Ethridge did not state as a fact that there was or was not any quantity whatever of crystalline (undissolved) arsenic found by him or any of his associates. Any question about the matter is cleared up by the testimony of analyst Patterson who testified subsequent to Dr. Minyard. Patterson positively and unequivocally established that no crystalline arsenic was filtered out or found. Thus the record is clear that the testimony of Dr. Minyard, or Dr. Ethridge by way of a written report, or analyst Patterson in no way shows or even suggests any defect in the subject product.
Ford Motor Company v. Cockrell, 211 So.2d 833 (Miss. 1968) was a case involving strict liability in tort. There we affirmed a jury verdict against a manufacturer where there was "direct and circumstantial evidence" of a latent defect in the truck traced back to manufacture of the truck. By any criterion one may apply, the evidence against appellant in the instant case was not nearly so cogent. The instant case is controlled by State StoveManufacturing Company v. Hodges, supra, because of the absence of evidence to show that the product (dip solution) was defective when it left the manufacturer's control. Overwhelmingly *Page 410 
demonstrated by the whole record is the inescapable conclusion that the product manufactured by appellant was within the range of United States Department of Agriculture regulations as safe and effective, and that if used as intended and according to directions it was safe for dipping cattle.
We have before us no evidence that (1) appellant was guilty of negligence, or (2) that it breached any warranty, or (3) that its product was defective. Such a state of the record together with the admission of appellee, Pevey, that he did not know whether or not his animals drank the solution during the dipping process, requires that the case be reversed and rendered. The verdict and judgment awarded appellee were contrary to the overwhelming weight of the evidence, and appellant should have been given the peremptory instruction it requested at the conclusion of all testimony.
Reversed and rendered.
GILLESPIE, C.J., and PATTERSON, INZER, SMITH, SUGG, and WALKER, JJ., concur.