John A. **CATHER**, Jr., Plaintiff,

v.

**CATHETER TECHNOLOGY CORPORATION**, Defendant.

Civ. A. No. W89–0055(B).

United States District Court, S.D. Mississippi, W.D.

Jan. 2, 1991.

---

Wayne Dowdy, McComb, Miss., for plaintiff.

Gail S. Akin, R.E. Parker, Jr., Vicksburg, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

BARBOUR, Chief Judge.

This cause is before the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on the Motion of Defendant, Catheter Technology Corporation, for Summary Judgment. Plaintiff has responded to the Motion. The Court, having considered the Motion and response, together with supporting and opposing memoranda of authorities and attachments thereto, is of the opinion that Defendant's Motion for Summary Judgment is well taken and should therefore be granted.

## I. FACTS AND PROCEDURAL HISTORY

John C. Cather, Jr. was diagnosed with colon cancer in October, 1988, while a patient at the Veteran's Administration Hospital in Dallas, Texas. Upon his doctor's recommendation that he undergo chemotherapy, Cather moved to Natchez, Mississippi and became a patient at the Veteran's Medical Center in Alexandria, Louisiana.

On January 17, 1989, Cather checked into the Veteran's Medical Center to have a Groshong catheter implanted in his chest for purposes of chemotherapy treatments. Due to a heavy surgery schedule, the operation was postponed. However, Cather was advised during this stay of the nature of the procedure that he was to undergo, and Betty McCormick, an oncology nurse at the Veteran's Hospital in Alexandria, recorded in Cather's medical records that she discussed with Cather both the nature of the chemotherapy treatment he was to receive and the catheter care and patient manual that accompanied the Groshong catheter. The catheter patient care manual contained the following statement:

> Will I have to change my activities because of the catheter? Generally, your activity will not be limited because of your Groshong Cath-tech Catheter. Be sure to consult your doctor or nurse.

On February 2, 1989, Cather was readmitted to the hospital for the catheter implant. On that date, he signed a consent form which stated that he had been advised "as to the nature of the proposed procedure(s), attendant risks involved, and expected results." On the next day, the Groshong catheter was implanted into Cather's chest.

Following the implantation of the catheter, Cather was released from the hospital and returned to his home. Based upon conversations that he had with the physicians who were treating him, Cather felt that it was necessary to maintain his health and physical condition during this time so that the treatment of the cancer would be effective. *Exhibit 1 to Plaintiff's Response to the Motion for Summary Judgment.* For some time prior to the catheter implant, Cather had exercised by walking and using an exercise device with two handles at the end of springs. *Id.* In his exercise program following the catheter implantation, Cather admits that he used the spring device on two or three occasions. *Id.*

On February 23, 1989, Cather was admitted to the hospital for chemotherapy treatments. Cather discussed the treatment procedures with the oncology nurse, McCormick. It is alleged that Cather's conversation with McCormick included a discussion of Cather's "weight-lifting." Cather denies that this topic was mentioned in the conversation. *Exhibit 1 to Plaintiff's Response to the Motion for Summary Judgment.* It is undisputed, however, that McCormick made a notation that day in Cather's medical records which states that Cather was cautioned against lifting weights or heavy objects and that such activity could damage the catheter. *Exhibit 7 to Defendant's Motion for Summary Judgment.*

On the following day, McCormick attempted to administer the chemotherapy treatment to Cather. McCormick discovered, however, that the catheter which had been implanted in Cather's chest had separated into two pieces. One of those pieces had become lodged in Cather's heart. Cather was air-lifted to the Veteran's Administration Medical Center in Houston, Texas, where the broken catheter was removed.

Kathy Scott, a Veteran's Hospital social worker, noted in a March 2, 1989, entry in Cather's medical records that Cather had suggested that his previous weight-lifting could be the cause of the catheter difficulties. *Id.* Cather, however, denies ever lifting weights during the relevant period or telling anyone, including hospital personnel, that the catheter broke because of weight lifting. *Exhibit 1 to Plaintiff's Response to the Motion for Summary Judgment.*

On March 20, 1989, Cather began having chest pains and was admitted to the hospital in Alexandria. Cather was later diagnosed as suffering from pneumonia, possible embolism, venous thrombosis, and colon cancer. Since that time, Cather has experienced problems with his left leg, and doctors who have examined Cather's leg report that blood clots have developed in the area.

On May 17, 1989, Cather instituted this suit against Catheter Technology Corporation ("CTC"), the manufacturer of the Groshong catheter. In his suit, Cather asserted breach of warranty, negligence, and strict liability claims against CTC. Specifically, Cather contends that CTC is liable for the following conduct:

(1) Failure to properly test and inspect the catheter;

(2) Failure to incorporate all measures into the catheter that would minimize the possibility of a tearing of the catheter;

(3) Failure to warn the user regarding the proper maintenance and use of said catheter;

(4) Failure to adequately test or inspect the materials used in the catheter;

(5) Failure to adequately warn or adequately instruct users of said catheter of the risks and hazards associated therewith.

*Plaintiff's Complaint* at 3. In response, Defendant has presented evidence by way of the affidavit of David A. Hullender a mechanical engineer who has stated that in his opinion the failure of the catheter was caused by the improper implantation of it by Mr. Cather's physician. Mr. Hullender appears to be qualified to give his expert opinion. Plaintiff has offered no evidence whatsoever to contradict this opinion, and, in fact, has offered no proof as to causation by expert testimony or otherwise.

## II. CONCLUSIONS OF LAW

Rule 56 of the Federal Rules of Civil Procedure states in relevant part that "summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party

will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Moreover, the party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of fact." *Id.* at 323, 106 S.Ct. at 2552–53. However, the movant need not support the motion with materials that negate the opponent's claim. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to an absence of evidence to support the non-moving party's claim; the non-moving party must then designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

■ Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir.1980). Summary judgment is improper when the court merely believes it is unlikely that the opposing party will prevail at trial. *National Screen Service Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir.1962).

Three primary issues are presented by the Motion for Summary Judgment now before the Court: (1) whether CTC is strictly liable for any defect that may have been present in the catheter; (2) whether CTC breached express and implied warranties concerning the condition of the catheter; and (3) whether CTC was negligent in testing, designing, or manufacturing the catheter, or was negligent in the warning issued in connection with use of the catheter.

"It is rare to find an appropriate case for summary judgment involving negligence or products liability." *Powe v. Wagner Electric Sales Corp.*, 589 F.Supp. 657, 660 (S.D.

Miss.1984). Upon examination of the record presented in this case, however, the Court concludes that Defendant's Motion for Summary Judgment should be granted.

### (1) Strict Liability

■ In order to recover on a theory of strict liability under Mississippi law, it must be established that: (1) the defendant placed a product on the market that was in a defective condition and unreasonably dangerous for its intended use; (2) the plaintiff was using the product in a manner that was reasonably foreseeable; and (3) the defective condition was the proximate cause of the injury to Plaintiff. *Mozingo v. Correct Manufacturing Corp.*, 752 F.2d 168, 176 (5th Cir.1985).

■ The existence of a product defect must be established before recovery may be had in strict liability. *Gray v. Manitowoc Co., Inc.*, 771 F.2d 866, 868–69 (5th Cir.1985); *William Cooper & Nephews, Inc. v. Pevey*, 317 So.2d 406, 408 (Miss. 1975). Under Mississippi law, Plaintiff may establish a product defect by evidence of a design defect, a manufacturing defect, or a defect in the warning that accompanied the product when it was placed on the market. *See Jackson v. Johns–Manville Sales Corp.*, 727 F.2d 506, 515 (5th Cir. 1984), *cert. denied* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986).

### a. *design or manufacturing defects*

■ When confronted with a summary judgment motion, the respondent must come forward with some evidence in support of his claim. Upon examination of the record in this case and the materials submitted in connection with the instant Motion, the Court concludes that Plaintiff has failed to offer any evidence whatsoever, expert or otherwise, of a design or manufacturing defect in relation to the Groshong catheter and, indeed, has failed to specify the manner in which he contends the product is defective. As Defendant has pointed out, Plaintiff has simply failed to place before this Court any evidence of design or manufacturing defect other than the mere conclusory allegation that, because the catheter broke, there must have

been some defect in its design or in the materials with which it was produced. While this Court is aware that, under Mississippi law, it is unnecessary to prove a specific, identifiable defect in a cause of action based on strict liability, Plaintiff must at least produce that minimal amount of circumstantial evidence that would allow a jury to infer a defective quality in the product. *Ford Motor Co. v. Matthews*, 291 So.2d 169, 173 (Miss.1974); *see also B F Goodrich, Inc v. Taylor*, 509 So.2d 895, 903 (Miss.1987); *Price v. Admiral Corp.*, 527 F.2d 412, 415 (5th Cir.1976). Mere proof of damage following the use of a product is not sufficient to establish liability. *William Cooper & Nephews*, 317 So.2d at 409. The doctrine of strict liability does not make a case for the Plaintiff merely by its pleading and is not the equivalent of the doctrine of res ipsa loquitur, which is a distinct and separate rule of circumstantial evidence. *Powe*, 589 F.Supp. at 661. The pleading of conclusory allegations does not, standing alone, create an issue of fact before the Court when it is considering a motion for summary judgment, and some scintilla of evidence must be placed before the Court in order to defeat the granting of the motion. Here, Plaintiff has presented no such evidence.

The Court therefore concludes that Plaintiff has failed to raise any genuine issue of fact regarding the strict liability claims for defective design or manufacture. Accordingly, Defendant's Motion for Summary Judgment is granted as to these allegations of the complaint.

### b. *defective warning*

■ The Court now turns to the allegation of a defect in the warning supplied by CTC in connection with distribution and use of the catheter. In considering this issue, the Court must initially determine whether the "learned intermediary rule" should be applied to the facts of this case. In *Wyeth Laboratories, Inc. v. Fortenberry*, 530 So.2d 688 (Miss.1988), the Mississippi Supreme Court adopted the learned intermediary doctrine and held that a drug manufacturer's duty to warn extends only to the prescribing physician and not to the patient himself where the drug in question is available only through a doctor's prescription. *Wyeth*, 530 So.2d at 692. While most jurisdictions that have considered the issue have extended the application of the learned intermediary doctrine to cover not only prescription drugs but also medical devices that are available only upon the advice and through the administration of a treating physician, *see Brooks v. Medtronic, Inc.*, 750 F.2d 1227, 1232 (4th Cir.1984); *Phelps v. Sherwood Medical Industries*, 836 F.2d 296, 303 (7th Cir.1987), the Court has been unable to find any opinion applying Mississippi law in which the learned intermediary doctrine has been applied to medical devices, such as the Groshong catheter. The Court is convinced, however, that the Mississippi Supreme Court would extend the learned intermediary doctrine to medical devices available only through physicians if that court were presented with that issue. The rationale that was expressed in the *Wyeth* opinion as the basis for adopting the learned intermediary doctrine for prescription drugs logically requires the extension of that doctrine to medical devices that are available only upon the advice and through the administration of a treating physician. Just as a physician intervenes as a medical expert in the administration of prescription drugs to his patients, a physician intervenes as a medical expert in the administration of certain medical devices to his patients. Since the cornerstone of the learned intermediary doctrine is the ability of the physician to intervene between the drug and the patient, and to make an informed decision as to the course of treatment based on the physician's knowledge of the drug as well as the propensities of his patient, *see Wyeth*, 530 So.2d at 692, this Court concludes that the Mississippi Supreme Court would find the doctrine to be of equal validity when applied to medical devices available only through the administration of a treating physician, such as the Groshong catheter.

Having determined that the learned intermediary doctrine applies to the facts of this case, the Court must now consider whether any genuine issue of material fact

has been presented as to the adequacy of the warning supplied by CTC to treating physicians who would be implanting the Groshong catheter in their patients. CTC gave the following warning on page 2 of the Physicians Instructions that accompanied every Groshong catheter manufactured by CTC:

> When placing the catheter in the axillary-subclavian vein, insert the catheter into the vein at a point lateral to the angle between the clavicle and the first rib to avoid pinch-off of the catheter which may cause occlusion damage or breakage.
>
> The use of an indwelling central venous catheter provides an important means of venous access for critically ill patients; however, the potential exists for serious complications including the following ...
> catheter embolism
> catheter occlusion
> catheter pinch-off
>
> . . . . .
>
> laceration
> perforation
> venous thrombosis

■■■ A manufacturer has a duty to adequately warn the prescribing physician of any known adverse effects which might result from use of its product. *Wyeth,* 530 So.2d at 691. A warning may be held adequate as a matter of law where the adverse effect that was ultimately visited upon the patient was one that the manufacturer specifically warned against. *See Wyeth,* 530 So.2d at 692–93. In the instant case, Plaintiff alleges that the implantation and ultimate breakage of the catheter was the cause of his suffering pneumonia, venous thrombosis, a possible embolism, and blood clotting. This Court notes that venous thrombosis and embolism were specifically mentioned in CTC's physician warning as possible side effects of the use of the Groshong catheter. The Court therefore concludes that, as a matter of law, the warning issued by CTC to treating physicians was adequate to warn against the dangers of these two injuries. Consequently, no genuine issue of material fact is presented as to these allegations of the complaint, and CTC is entitled to summary judgment on these issues as a matter of law.

■■■ Pneumonia and blood clotting therefore remain as the two injuries which Plaintiff alleges that CTC failed to adequately warn against. However, this Court recalls that in addition to establishing a defect in the product, a plaintiff seeking to recover under a theory of strict liability must also establish that the defective product was the proximate cause of the injury. *Mozingo,* 752 F.2d at 176. Without determining that the Groshong catheter was in fact defective because of a failure to adequately warn against the dangers of pneumonia and blood clotting, this Court concludes that no evidence has been brought forward by Plaintiff to establish a genuine issue of fact on the matter of causation with regard to these two injuries. Plaintiff has placed no evidence, expert or otherwise, before this Court that indicates any possible cause of the pneumonia and blood clotting. Consequently, the record is devoid of any proof that the Groshong catheter was in any way the cause of any injury that Plaintiff alleges he has suffered. Since no genuine issue of material fact has been presented as to these allegations of the complaint, the Court concludes that CTC is entitled to summary judgment on these issues as a matter of law. Were the claims involving venous thrombosis and embolism not otherwise disproved of as stated above, they likewise would fail for failure to present any evidence of causation.

■■■ Plaintiff asserts that, even if the Court determines that the warning provided by CTC to physicians in connection with usage of the catheter were adequate, CTC does not automatically escape liability on the basis of the learned intermediary doctrine because CTC issued a warning directly to the patient himself. While Plaintiff correctly notes that CTC owed no duty to warn the patient-user of the catheter directly, Plaintiff contends that CTC waived the protection of the learned intermediary doctrine by issuing a warning directly to

the patient. Plaintiff contends the patient warning was inadequate, thus rendering the catheter a defective product.

This Court has been unable to find any court opinion from any jurisdiction that has addressed this novel twist on the learned intermediary doctrine. The issue therefore appears to be one of first impression. However, the Court concludes that it is not necessary to rule on this issue under the particular facts of this case. The patient care manual that was issued by CTC to every patient receiving the Groshong catheter provided in part:

> Will I have to change my activities because of the catheter? Generally, your activity will not be limited because of your Groshong Cath-tech Catheter. Be sure to consult your doctor or nurse.

Plaintiff alleges, the manual failed to adequately warn of the danger that certain physical activities might pose to patients who had received the catheter implant. Specifically, Plaintiff alleges that the manual inadequately addressed the dangers that might confront catheter patients who continued to exercise with devices such as the hand springs which he used following the implantation of the catheter. This Court notes, however, that acceptance of Plaintiff's argument on this point would only establish the defective product element of a cause of action in strict liability. It would still be necessary for Plaintiff to produce some evidence of causation in order to establish that a genuine cause of action in strict liability exists. Plaintiff has produced no evidence that the defect, i.e., the failure to warn against the use of hand springs, was the cause of the injuries suffered by Plaintiff. The Court reaches this conclusion since there is no proof presently before it that the use of such exercise equipment may have been the cause of the injuries Plaintiff suffered. With no proof before it that Plaintiff's use of exercise equipment may have been the cause of the injury, this Court cannot logically conclude that the failure to warn against the use of such equipment could render the catheter defective. Accordingly, the Court concludes that no genuine issue of material fact has been placed before it concerning

the adequacy of the warning issued by CTC directly to patients using the Groshong catheter. Therefore, the Court finds that Defendant is entitled to summary judgment on those allegations of the complaint as a matter of law.

### (2) Breach of Warranty and General Negligence Actions

In addition to a strict liability claim, Plaintiff also asserts that Defendant is liable under theories of breach of warranty and under general tort principles of negligence.

To recover under a theory of breach of warranty, plaintiff must prove, among other elements, that the goods were unfit for their normal use at the time of sale and that the plaintiff incurred injuries that were proximately caused by the defective nature of the goods. *Vince v. Broome*, 443 So.2d 23, 26 (Miss.1983). In the instant action, Plaintiff has failed to produce any evidence that the catheter was defective or otherwise unfit at the time of sale. Additionally, Plaintiff has failed to establish any causal connection between the condition of the catheter and any injury incurred by Plaintiff. Accordingly, the Court finds that no genuine issue of material fact has been presented as to the breach of warranty count of the complaint and that Defendant is entitled to summary judgment on that issue as a matter of law.

The four basic elements of a negligence action are:

> (1) plaintiff must be protected under some rule of law against defendant's conduct (duty); (2) defendant's conduct must have violated this duty (breach); (3) plaintiff's injury must be the result of defendant's conduct (causal relationship); and (4) plaintiff must have suffered a loss (damage).

*Ward v. Hobart Manufacturing Co.*, 450 F.2d 1176, 1181 (5th Cir.1971). Upon review of the record in this case, the Court concludes that Plaintiff has brought forward no evidence of a breach of duty on the part of the Defendant, nor has Plaintiff produced any evidence of a causal connec-

tion between the injuries suffered and any conduct on the part of Defendant. The Court therefore finds that no genuine issue of material fact exists as to the negligence count of the complaint and that Defendant is entitled to summary judgment on that issue as a matter of law.

### III. CONCLUSION

The Court accordingly concludes that no genuine issue of material fact has been placed before it concerning the strict liability, breach of warranty, or negligence counts of Plaintiff's complaint. Therefore, the Court finds that Defendant is entitled to summary judgment on all counts of the complaint as a matter of law.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment be granted as to all counts of the Plaintiff's complaint.

SO ORDERED.