**Kim CHILDS, Individually and as Administratrix of the Estate of Phillip Jason Childs, and next Friend and Mother of Phillip Jason Childs, Jr., a Minor, Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

No. 4:98CV96–P–A.

United States District Court,
N.D. Mississippi,
Greenville Division.

Sept. 27, 1999.

Frank John Dantone, Jr., Henderson, Dantone & Hines, Greenville, MS, for Plaintiffs.

Paul Cassisa, Jr., Bernard, Cassisa & Elliott, Oxford, MS, Paul Mathis, Jr., Lake Tindall, LLP, Greenville, MS, for Defendant.

### *MEMORANDUM OPINION*

PEPPER, District Judge.

This cause is presently before the Court on the defendant's motions for partial summary judgment. Upon due consideration of the defendant's motions, the plaintiffs' responses thereto, and the memoranda

submitted to this Court by both parties, the Court is prepared to rule. The Court finds as follows, to-wit:

## FACTUAL BACKGROUND

On September 17, 1995, Phillip Jason Childs, age 21, was driving a 1990 GMC Suburban that belonged to his parents. His wife, Kim Childs, was in the Suburban with him. Kim was six weeks pregnant at the time.[1] According to the complaint, both Mr. and Mrs. Childs were wearing their seatbelts in a proper manner. The Suburban was traveling westbound on Wilmont Road. The complaint then alleges that after Mr. Childs stopped and looked both ways at the intersection of Wilmont Road and Old Highway 61, he proceeded to cross Old Highway 61 and was hit by a Ford Mustang traveling north on Old Highway 61 driven by Ronel Bryant. The plaintiffs (Kim Childs and her son, Jason Phillip Childs, Jr.) allege that the seat belt that Mr. Childs was wearing malfunctioned and caused him to be thrown from his seat. The Suburban subsequently rolled over, and during the roll over the plaintiffs allege that the front passenger door malfunctioned, unlatched, opened and closed on Mr. Childs, causing fatal head injuries.

Kim Childs and Jason Phillip Childs, Jr., by and through Kim Childs, filed this lawsuit against General Motors on April 24, 1998, alleging strict liability, negligence, and breach of warranties. The defendant, General Motors, has filed a motion for partial summary judgment to dismiss the Childs' door latch defect claims, negligence claims, and breach of warranty claims. GM has also filed for partial summary judgment to dismiss the claims made on behalf of the decedent's unborn son, Phillip Jason Childs, Jr.

## STANDARD OF REVIEW

Summary judgment should be entered only if "... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id.* "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett, supra*, at 322, 106 S.Ct. 2548.

The summary judgment procedure does not authorize trial by affidavit. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc., supra*, at 255, 106 S.Ct. 2505. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems*, Inc., 669 F.2d 1026, 1031 (5 Cir.1982); *Environmental Defense Fund v. Marsh*, 651 F.2d 983,

1. Kim Childs gave birth to Jason Phillip Childs, Jr., on May 6, 1996.

991 (5 Cir.1981); *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5 Cir.1969).

Under the provisions of Rule 56(e), Federal Rules of Civil Procedure, a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett, supra,* at 324, 106 S.Ct. 2548. The facts stated in uncontradicted affidavits or other evidentiary materials must be accepted as true. However, the moving party must still show that he is entitled to judgment on those facts as a matter of law, and if he fails to discharge that burden he is not entitled to judgment, notwithstanding the apparent absence of a factual issue. 6–Pt. 2, Moore, *Federal Practice (2d Ed.),* ¶ 56.22[2], p. 56–777.

## LEGAL ANALYSIS

### I. MOTION FOR PARTIAL SUMMARY JUDGMENT TO DISMISS PLAINTIFF'S DOOR LATCH DEFECT CLAIM

Plaintiffs allege in their complaint that the latch mechanism on the front passenger door of the 1990 Suburban was so defective as to be unreasonably dangerous, and the negligent design and manufacture and resulting malfunction of the door latch of the 1990 GMC Suburban was a direct cause of Phillip Jason Childs' death. GM has filed a motion for partial summary judgment to dismiss any defective door latch claims. Plaintiffs have not responded to this motion.

■ Although this Court cannot grant summary judgment simply because there has been no opposition to the motion, *Hibernia National Bank v. Administracion Cental Sociedad Anonima,* 776 F.2d 1277, 1279 (5th Cir.1985), the Court may accept as undisputed the movant's version of the facts and grant the motion where the movant has made a prima facie showing of his entitlement to summary judgment. *Eversley v. MBank Dallas,* 843 F.2d 172, 174 (5th Cir.1988). "When confronted with a summary judgment motion, the respondent must come forward with some evidence in support of his claim." *Cather v. Catheter Technology Corp.,* 753 F.Supp. 634, 638 (S.D.Miss.1991).

According to Plaintiffs' Designation of Experts, the plaintiffs have designated two experts: Dr. Anthony Sances and Mr. Bruce Enz. Dr. Sances's testimony will concern the defective seat belt and restraint system, and Mr. Enz's testimony will involve accident reconstruction. The plaintiffs have not designated an expert to address the issue of a defective door latch, nor have they offered any other proof of a defective door latch in their response to GM's motion for summary judgment on the issue, except for that allegation of the complaint. As the Court in *Cather* pointed out, "[t]he pleading of conclusory allegations does not, standing alone, create an issue of fact before the Court when it is considering a motion for summary judgment, and some scintilla of evidence must be placed before the Court in order to defeat the granting of the motion." *Id.* at 639.

■ The Court finds that there are no genuine issues of material fact which preclude the entry of summary judgment on the door latch claim, and as such the Motion for Partial Summary Judgment to Dismiss Plaintiffs' Door Latch Claims is GRANTED.

### II. MOTION FOR PARTIAL SUMMARY JUDGMENT TO DISMISS PLAINTIFF'S NEGLIGENCE AND BREACH OF WARRANTY CLAIMS

#### A. NEGLIGENCE

GM contends that according to the Mississippi Products Liability Act (MPLA), Miss.Code Ann. § 11–1–63, the plaintiff does not have a cause of action for negligence because the Act does not recognize negligence claims.

However, the plaintiffs assert, and the Court agrees, that this issue has already been addressed in a non-published opinion, *Taylor v. General Motors*, 1996 WL 671648 (N.D.Miss.). In *Taylor*, Judge Biggers held that the MPLA was not "intend[ed] to abrogate the long established common law theory of negligence or the statutory cause of action for breach of implied warranty." *Taylor*, at *2. Generally speaking, "a new statute will not be considered reversing long-established principles of law and equity unless the legislative intention to do so clearly appears." *Id.* In *Taylor*, as well as in the case at bar, GM only relies on the first sentence of the Act to support its argument that negligence and breach of implied warranty claims are not recognized by the Act.[2] If the legislature intended to restrict any available claims, especially given the fact that Mississippi has a "long standing tradition of pleading alternative theories in one action," then the legislature would have clearly done so. *Id.* at *2.

The MPLA was established by House Bill 1270 in 1993. The introduction of that bill states that the bill is "[a]n act to codify certain rules and establish new rules applicable to product liability actions." *Id.* Judge Biggers held, and this Court agrees, that "[s]ince the Act is silent on alternative causes of actions, but expressly discusses those areas that effect a change in the common law, it is reasonable to presume the legislature did not intend to preclude that which was so prevalent in practice." *Id.*

In addition to establishing the MPLA, House Bill No. 1270 also amended § 75-2-715 of Mississippi's version of the UCC, dealing with incidental and consequential damages. However, the legislature left unchanged that section's definition of consequential damages. Section 75-2-715 defines consequential damages as including "injury to person or property proximately resulting from any breach of warranty."

The legislature did not change the definition of consequential damages, and therefore it must have intended for a cause of action under the UCC to still be available. As Judge Biggers stated in *Taylor*, "the legislature could not have intended to create the exclusive chose in action for damages caused by a product if they, in the same bill, recognized (and left undisturbed) an alternate action under the UCC." *Id.* at *3.

House Bill 1270 also amended the Wrongful Death Act, Miss.Code Ann. § 11-7-13. The Act states that a "wrongful death action may be maintained or asserted for strict liability in tort *or for any other cause of action known to the law* ...." *Id.* (emphasis added). Therefore, Judge Biggers reasoned, "the legislature clearly intended, inter alia, that an action could be maintained by a wrongful death beneficiary for a breach of implied warranty involving a product—an action the defendant would not admit existed under its theory of § 11-1-63. Thus, many alternative causes of action are available to the injured claimant—a notion clearly recognized by the legislature in enacting this Bill." *Id.*

This Court agrees with Judge Biggers' holding in *Taylor*; that is, the MPLA established the procedures to be followed for a strict liability claim and did not abolish claims brought under negligence and breach of implied warranty. Therefore, the Motion for Partial Summary Judgment to Dismiss the Negligence and Breach of Warranties Claim is DENIED in regard to any negligence claims.

## B. BREACH OF WARRANTIES

In their complaint, the plaintiffs state that GM expressly and impliedly warranted that the Suburban was "suitable, proper and safe, and that it could be used by Phillip Jason Childs without untoward consequence or severe personal injury result-

---

2. "In any action for damages caused by a product ..." a manufacturer or seller of a product will not be liable unless the plaintiff can prove that certain elements have been met.

ing to him or his passengers when the Suburban might be involved in a wreck." Plaintiffs' Complaint at 7. The complaint goes on to allege that the Suburban was warranted to be "of merchantable quality and was fit and safe for its intended use, foreseeable use and reasonably foreseeable consequences of such use ..." *Id.* at 8. GM filed a motion to dismiss both the express and implied warranty claims.

## 1. EXPRESS WARRANTY

The 1990 GMC Suburban that is the subject of this suit came with a three year, 50,000 mile warranty, which expired three years after the date of the first retail delivery or 50,000 miles of use, whichever came first. GM argues that the express warranty for this 1990 GMC Suburban had expired on February 15, 1993.[3] Furthermore, the Suburban had been driven more than 50,000 miles.[4]

In their Response to GM's Motion for Partial Summary Judgment to Dismiss Plaintiffs' Negligence and Breach of Warranty Claims, Plaintiffs do not offer any evidence to indicate that the used Suburban was expressly warranted, or what those express warranties were. Plaintiffs did not even address the issue of an express warranty in their response. As such, the Court finds that there are no genuine issues of material fact which preclude summary judgment with regard to the express warranty claim, and as such the Motion for Partial Summary Judgment to Dismiss Plaintiffs' Negligence and breach of Warranty Claims is GRANTED in regard to any breach of express warranty claims.

**3.** The original retail purchase of the Suburban occurred on February 15, 1990.

**4.** The Suburban was purchased used with 76,-735 miles on it.

**5.** See also *Maly v. Magnavox,* 460 F.Supp. 47 (N.D.Miss.1978) (action for breach of contract of sale must be commenced within six years after cause of action accrued); *Estate of*

## 2. IMPLIED WARRANTY

GM contends that the plaintiffs' breach of implied warranty claim is not permissible under the MPLA, because the MPLA provides only for claims of breach of express warranty or for failure to conform with an express factual representation upon which the claimant justifiably relied in electing to use the product. However, the Court holds that the MPLA does allow for such claims, for the reasons stated above.

GM also states that plaintiffs' breach of warranty claim is barred by the statute of limitations, which bars breach of warranty claims six years from the date of delivery of the product. Miss.Code Ann. § 75–2–725 reads in part:

(1) An action for breach of any contract for sale must be commenced within six (6) years after the cause of action has accrued.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made....

Miss Code Ann. § 75–2–725.[5] In their response, plaintiffs state that "[w]hile Miss Code Ann. § 75–2–725 (1972) might bar plaintiffs' claim of breach of implied warranty; it is not a bar to Plaintiffs' claims of negligence and strict liability." Plaintiffs' Response to Defendant's Motion for Partial Summary Judgment to Dismiss Plaintiffs' Negligence at Breach of Warranty Claims at 4. Evidently, the plaintiffs acknowledge that the statute of limitations is a bar to their breach of implied warranty claim.

*Hunter v. General Motors,* 729 So.2d 1264, 1267 (Miss.1999) (breach of warranty claim on a 1981 Tornado was barred by the statute of limitations, which bars breach of warranty claims six years from date of delivery of the product); *Kelly v. General Motors,* 1998 WL 930616, Civil Action No. 1:98cv40–JAD (N.D.Miss.Nov.5, 1998) (a breach of warranty occurs when tender of delivery is made, not when injuries are sustained).

Given the Mississippi statute that requires for breach of warranty claims be brought within six years from the date of delivery, and the fact that the plaintiffs concede that § 75–2–725 might be a bar to their claim of breach of implied warranty, the Court finds that there are no genuine issues of material fact which preclude summary judgment with regard to the implied warranty claim, and as such the Motion for Partial Summary Judgment Dismissing the Negligence and Breach of Warranty Claims is GRANTED in regard to any breach of implied warranty claims.

### III. MOTION FOR PARTIAL SUMMARY JUDGMENT TO DISMISS CLAIMS MADE ON BEHALF OF PHILLIP JASON CHILDS, JR.

The plaintiffs assert that Phillip Jason Childs, Jr., should recover for the wrongful death of his father because Kim Childs was pregnant with him at the time of his father's death. Kim Childs was about six weeks pregnant when her husband died, and both parties agree that Phillip Jason Childs, Jr., was not a viable fetus at that time. GM contends that Phillip Jason Childs, Jr., should not be allowed to recover for the wrongful death of his father because the Mississippi Supreme Court has not recognized a non-viable fetus as a beneficiary who was living within the meaning of Mississippi's wrongful death statute, Miss.Code Ann. § 11–7–13.

This is a question of first impression in Mississippi. "When there is no ruling by the state's highest court, it is the duty of the federal court to determine as best it can, what the highest court of the state would decide." *Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.*, 953 F.2d 985, 988 (5th Cir.1992) (footnote omitted). This Court is therefore required to make an Erie guess on how the Mississippi Supreme Court would interpret its own law if presented with the question. *Lawrence v. Virginia Ins. Reciprocal*, 979 F.2d 1053, 1055 (5th Cir. 1992); see also *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Although Mississippi courts have never decided whether a non-viable fetus could recover for the death of a relative under the state's wrongful death statute, the Mississippi Supreme Court held just last year that a preborn child who was viable at the time of a relative's death can be a wrongful death beneficiary under Mississippi's wrongful death statute. *In re Estate of Davis*, 706 So.2d 244 (Miss.1998). In *Davis*, the guardians of Rico Davis, brother of the deceased Tarrance Davis, sought beneficiary status for Rico under the Mississippi Wrongful Death Statute. That statute provides that "... if the deceased has no husband, nor wife, nor children, the damages shall be distributed equally to the father, mother, brothers and sisters, or such of them as the deceased may have *living* at his or her death." Miss.Code Ann. § 11–7–13 (Supp.1997) (emphasis added). The supreme court held Rico, who was at six and one-half months gestation at the time of his brother's death, should be considered "living" in accordance with the statute. The court stated that "a preborn child who is viable at the time of a relative's death and is ultimately born alive, is 'living' such that he or she can be a wrongful death beneficiary under the law." *Davis*, at 247 (Miss.1998). But the court refused to decide whether a *non-viable* fetus could recover in the same situation. That, the court reasoned, should be determined at a later date under "an appropriate set of circumstances properly raising the question." *Id.* at 248.

■ After reviewing Mississippi's wrongful death statute, this Court holds that Phillip Jason Childs, Jr., is entitled to recovery under the statute. Miss.Code Ann. § 11–7–13 states that

[w]henever the death of any person shall be caused by any real, wrongful, or negligent act or omission ... as would, if death had not ensued, have entitled the party injured or damaged thereby to maintain an action and recover damages in respect thereof, ... and such deceased person shall have left a widow or

children or both, ... the person or corporation, or both that would have been liable if death had not ensued, ... shall be liable for damages.... In such action the party or parties suing shall recover such damages allowable by law as the jury may determine to be just.... Damages for the injury and death of a married man shall be equally distributed to his wife and children....

Miss.Code.Ann. § 11–7–13 (Supp.1999).

Clearly, Phillip Jason Childs, Jr., is a "child" of the decedent as required in the wrongful death statute. Although the statute does not address the requirement that a decedent's child be "living" at the time of the decedent's death [6], the Court is nonetheless prepared to discuss this requirement with respect to Phillip Jason Childs, Jr.

The Court does not agree with defendant's argument that Phillip Jason Childs was not "living" at the time of his father's death because he was not viable. The Court finds compelling *Harper v. Archer*, 4 Smedes & M. 99, 12 Miss. 99 (1845), which held that an infant is in existence from the time of conception for purpose of taking any estate which is for his benefit, provided that such infant is born alive and after such a period of fetal existence that its continuance in life might be reasonably expected. Beginning with *Harper v. Archer*, Mississippi common and statutory laws have traditionally protected the unborn. *Davis* at 247.

Determining whether an unborn child can recover under the wrongful death statute based on that child's viability defeats the purpose of the wrongful death statute, which was enacted to ensure compensation to the heirs of a decedent. See *Thomas v. Hilburn*, 654 So.2d 898 (Miss.1995). The supreme court in *Davis* had the opportuni-

ty to address whether a non-viable fetus could recover under Mississippi's wrongful death statute, but opted to abide by the principle that "[j]udges ought never to give their opinion on a law till it comes before them." *Davis*, at 248 (citation omitted). However, Justice Mills issued a separate concurring opinion, which was joined by Justice Roberts and Justice Smith. In his concurrence, Justice Mills stated that

[t]he legislative enactment of our wrongful death statute clearly confers beneficiary status upon all of the 'living.' Though many in our society may differ as to when life may exist independently, there is no doubt that a fetus in utero is alive. Therefore, a preborn child should be entitled to wrongful death benefits as long as he or she was in utero at the time the tortious act was committed. Whether the child has reached the stage of prenatal viability is of no concern.

*Id.* at 249 (Mills, J., concurring).[7] This Court agrees with Justice Mills's rationale, and this Court further believes that if the Mississippi Supreme Court were confronted with this issue, it would hold that a non-viable fetus could recover under Mississippi's wrongful death statute.

The Motion for Partial Summary Judgment to Dismiss the Claims Made on Behalf of Phillip Jason Childs, Jr., is DENIED.

## CONCLUSION

Based on the foregoing, the Motion for Partial Summary Judgment to Dismiss Plaintiffs' Door Latch Claims is GRANTED; the Motion for Partial Summary Judgment to Dismiss Plaintiffs' Negligence and Breach of Warranty Claims is GRANTED IN PART and DENIED IN PART; and the Motion for Partial Sum-

---

**6.** The statute only addresses the requirement that a person entitled to recover be "living" at the time of a decedent's death when the decedent has no husband, no wife, and no children. In those circumstances, as is the case with *Davis*, the statute requires that damages can be recovered by the "father, mother, brothers and sisters, or such of them as the

deceased may have living at his or her death." Miss.Code Ann. § 11–7–13.

**7.** The majority notes that "[t]here is much merit in [Mills's] view," but nonetheless declined to address the issue until the circumstances warranted it. *Id.* at 248.

mary Judgment to Dismiss the Claims Made on Behalf of Phillip Jason Childs, Jr., is DENIED.

## JUDGMENT

This cause is presently before the Court on the defendant's motions for partial summary judgment. After careful consideration of the motions, the briefs and authorities cited, the Court hereby finds that the defendant's Motion for Partial Summary Judgment to Dismiss Plaintiffs' Door Latch Claim should be GRANTED, the Motion for Partial Summary Judgment to Dismiss Plaintiffs' Negligence and Breach of Warranty Claims should be GRANTED IN PART and DENIED IN PART, and the Motion for Partial Summary Judgment to Dismiss the Claims Made on Behalf of Phillip Jason Childs, Jr., should be DENIED. Therefore, in accordance with the findings and analysis as set forth in the Court's Memorandum Opinion,

IT IS, THEREFORE, ORDERED AND ADJUDGED that the defendant's Motion for Partial Summary Judgment to Dismiss Plaintiffs' Door Latch Claims is GRANTED, and the Court hereby orders that said claim be DISMISSED WITH PREJUDICE. The Court further orders that defendant's Motion for Partial Summary Judgment to Dismiss Plaintiffs' Negligence and Breach of Warranty Claims is GRANTED as to the breach of warranties claim, and the Court hereby orders plaintiffs' breach of warranties claim be DISMISSED WITH PREJUDICE. The Court further orders that defendant's Motion for Partial Summary Judgment to Dismiss Plaintiffs' Negligence and Breach of Warranty Claims is DENIED as to the negligence claim. Finally, the Court orders that the defendant's Motion for Partial Summary Judgment to Dismiss the Claims Made on Behalf of Phillip Jason Childs, Jr., is DENIED.