Althea DAVIS and Ronald
Davis Plaintiffs

v.

FORD MOTOR COMPANY and
John Does Defendants

No. CIV.A. 3:02CV271LN.

United States District Court,
S.D. Mississippi,
Jackson Division.

June 23, 2005.

---

Ellie F. Turnage, Halbert E. Dockins, Jr., Dockins, Turnage & Banks, PLLC, Jackson, MS, Sara Katherine Barrett, Barrett Law Offices, Lexington, MS, for Plaintiffs.

J. Stephen Kennedy, Walker W. Jones, III, Barry Wayne Ford, Joseph Kyle Fulcher, Lawrence M. Coco, III, Tiffanee Nicole Wade–Henderson, Gene D. Berry, Baker, Donelson, Bearman, Caldwell &

Berkowitz, PC, Jackson, MS, D. Alan Thomas (PHV), H. Lanier Brown—PHV, II, R. Gordon Sproule—PHV, Jr., Huie, Fernambucq & Stewart, Birmingham, AL, Kathleen P. Morgan, James J. Crongeyer, Jr., Watkins & Eager, Jackson, MS, Robert T. Gordon, Jr., Mitchell, McNutt & Sams, PA, Jackson, MS, for Defendants.

## MEMORANDUM OPINION. AND ORDER

TOM S. LEE, District Judge.

There are pending in this cause at this time a number of motions which have been fully briefed and are ripe for decision, as follows:

- Motion by Defendant Ford Motor Company (Ford) for Partial Summary Judgment on All Claims Except those Based on Alleged Handling and Stability Defects;

- Motion by Plaintiffs Althea Davis and Ronald Davis for Negative Inference Instruction Due to Defendant's Spoliation of Evidence and to Strike All of Defendant's Defenses Based on Lack of Post–Accident Tests, Observations and Analysis of Spoliated Subject Vehicle;

- Motion by Ford for Summary Judgment Based on Plaintiff's Effective Admission that Their Experts Have No Valid Data on Which to Base Their Opinions that the Subject Vehicle was Defective;

- Motion by Ford to Strike Plaintiffs' Experts William Medcalf and James Hannah Based on Plaintiff's Failure to Provide Deposition Dates in Violation of the Case Management Order; and

- Motion by Ford for Sanctions Based on Plaintiffs' Filing an Unfounded and Frivolous Spoliation Motion.

Having considered the parties' arguments and exhibits relating to these various mo-tions, all of which are to some extent interrelated, the court concludes as follows.[1]

Plaintiffs filed this suit on February 19, 2002 against Ford, Hertz Rent A Car and Firestone Tire Company seeking to recover damages on account of injuries sustained by Althea Davis in an automobile accident. At the time of the accident on May 4, 2000, Mrs. Davis was driving a 2000 Ford Explorer her husband, Dr. Ronald Davis, had rented from Hertz Rent A Car. According to Mrs. Davis and her witnesses, as she was traveling in the left lane of northbound Interstate 220 in Jackson, a vehicle from the right lane veered into her lane in front of her; she swerved to the left, into the median, to avoid hitting the car, and after pulling back onto the interstate and regaining control of the vehicle, the Explorer suddenly went into a roll and flipped into the median. According to Mrs. Davis, although she was wearing her seatbelt and had properly closed and latched the door, the door nevertheless came open and she was thrown from the vehicle, which came to rest on top of her.

Plaintiffs have moved for a negative inference instruction based on what they maintain amounts to spoliation of evidence by "defendants." Specifically, they state that although Dr. Davis notified Hertz on the very day of the accident that his wife had been involved in a serious accident while driving the Explorer, Hertz did nothing to secure the vehicle even though it knew or should have known that the vehicle was material evidence, and instead, according to plaintiffs' characterization, Hertz "hastily sold the subject" vehicle for reasons unknown to plaintiffs, and it was thereafter "reconstructed by defendants" before plaintiffs had an opportunity to inspect, view or test it. Plaintiffs argue that as a result of defendants' "rush to disman-

---

1. Ford has also recently filed a Motion to Strike Plaintiffs' First Supplement to Expert Report of Mr. William E. Medcalf Jr., P.E. That motion is not fully briefed.

tle and reconstruct the subject vehicle," they have been irreparably prejudiced in that they "were not able to document, examine or test theoretical forensic evidence on the Explorer while the vehicle was in its unreconstructed post accident condition." Plaintiffs thus insist that a negative inference instruction is in order.

The Mississippi Supreme Court has held that "[w]hen evidence is lost or destroyed by one party (the 'spoliator'), thus hindering the other party's ability to prove his case, a presumption is raised that the missing evidence would have been unfavorable to the party responsible for its loss." *Thomas v. Isle of Capri Casino,* 781 So.2d 125, 133 (Miss.2001). The court in *Thomas* acknowledged the rationale for this presumption, as follows: " '[S]poliation and all similar conduct is receivable against [a party] as an indication of his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit.' " *Id.* (quoting 2 J. Wigmore, *Evidence* § 278, at 133 (J. Chadbourn rev.1979)). The court held, however, that the negative presumption raised by spoliation may properly be drawn not only when the loss destruction is unexplained or deliberate, but that it also may appropriately be drawn in specific circumstances where the destruction or loss was the result of negligence. *Id.*

In *Thomas,* a dispute existed as to whether a patron of the Isle of Capri casino had hit a $2,700,000 jackpot on a particular slot machine. Although the information contained in the CPU of that slot machine would have conclusively established whether the patron had in fact won any jackpots on the night in question, and although the casino was aware of the patron's claim and was under a statutory duty to contact the Gaming Commission when it became clear that the dispute had not been resolved to the patron's satisfaction, the casino "recycled" the memory components of the machine before anyone tested it to determine whether the jackpot had, in fact, been won. The court concluded that under those circumstances, a negative inference could properly be drawn, for it could not be said that the information contained in the CPU of the subject machine was lost through no fault of the casino. *Id.*

The court had reached the same conclusion on analogous facts in *DeLaughter v. Lawrence County Hospital,* 601 So.2d 818, 821–822 (Miss.1992), a medical malpractice case, stating that "where the evidence is positive that the hospital deliberately destroyed the original medical record or where a record required by law to be kept is unavailable due to negligence, an inference arises that the record contained information unfavorable to the hospital, and the jury should be so instructed."

Plaintiffs herein argue that "[d]efendants' spoliation of this critical evidence (i.e., the vehicle itself) was intentional," inasmuch as "defendants" made no effort to preserve the vehicle even though they knew the vehicle had been involved in a serious accident and also knew that there was a "worldwide torrent of litigation concerning Ford Explorer rollovers."

In response, Ford points out that the Explorer was sold to a salvage yard in the normal course of business by former defendant Hertz on August 24, 2000, almost three months after the accident, at a time when Hertz had no notice of any potential litigation involving the subject vehicle. It further notes that, in fact, no defendant had any notice of this lawsuit, or the potential for this lawsuit, until two years after the accident when plaintiffs filed their complaint on February 19, 2002.[2] It

---

2. It also appears that plaintiffs did not consult an attorney about a potential lawsuit until

insists that under the circumstances, it cannot reasonably be concluded that the sale and subsequent repair of the vehicle amount to intentional, or for that matter, even negligent, "destruction" of evidence, and that the proposed negative inference instruction is certainly not justified. The court must agree.

■ The fact is, there is nothing to indicate that either Hertz or Ford was aware at the time the vehicle was sold that litigation would likely be brought or that the sale was other than in Hertz's normal course of business.[3] Moreover, the vehicle was not sold immediately, but was retained by Hertz for three months following the accident. The court understands that plaintiffs' focus during that time was not on potential litigation but rather on dealing with the physical and emotional aftermath of the accident itself; but defendants, absent some notice by plaintiffs of impending litigation or an affirmative duty imposed by law, were not bound to preserve the vehicle and are not to suffer a negative inference as a consequence of the disposition of the vehicle. Indeed, as Ford aptly observes, to accept plaintiffs' position would be to hold, in essence, that automobile manufacturers should retain and preserve every vehicle involved in any automobile accident—or at least the serious ones—indefinitely so that the vehicle will be available for inspection and testing in

case someone were to decide to sue the manufacturer at some time in the future. This is obviously not a reasonable position.

Of course, here, Ford was aware of litigation against it by others relating to the alleged rollover propensity of its Explorer model. However, even assuming for the sake of argument that its awareness of other litigation involving the Explorer might have alerted it to the possibility that these plaintiffs would also sue eventually (and assuming further that Ford and/or Hertz were even aware that this was a rollover accident), the court still would reject plaintiffs' request for a negative inference instruction. The alleged defect which has been claimed in other rollover cases is a design defect; and inasmuch as the specific Explorer involved in this accident was presumably no different in design than all other model year 2000 Explorers manufactured by Ford, plaintiffs' inability to inspect, view or test the actual vehicle involved in this particular rollover accident cannot have impaired their ability to establish their claim based on the alleged design defect in the handling and stability of the Explorer.[4]

Having said that, their inability to inspect, view or test the vehicle does impair their ability to establish any defect in the vehicle's safety restraint system, i.e., the seatbelt and door latches, as is addressed

April 4, 2001, nearly a year after the accident.

3. The court does note that the Explorer was sold by Hertz, not by Ford, which is the sole remaining defendant. Though Hertz was originally sued, as was Firestone, both defendants were dismissed from the case two years ago. There is nothing in the record to suggest that Ford, the party against which plaintiffs seek a negative inference instruction, had any involvement in the sale and subsequent repair of the vehicle. Plaintiffs also acknowledge this, but argue that because Ford owns Hertz, it is chargeable with the same knowledge and responsibility vis-a-vis the vehicle as

Hertz. They submit that at the very least, if the court were inclined to conclude that a negative inference instruction is not proper against Ford because Hertz disposed of the vehicle, then they should first be given an opportunity for discovery to address the corporate relationship between Ford and Hertz. The court need not address these issues further because in its opinion, no defendant (present or former) had any sort of duty to preserve the vehicle.

4. Plaintiffs concede as much in their response to Ford's motion for summary judgment, addressed *infra*.

more fully in connection with the discussion of Ford's partial summary judgment motion; but the fact that Ford was aware of other rollover litigation would not even arguably have put Ford on notice that plaintiffs would likely sue alleging a defect in the vehicle's safety restraint system. And absent such notice, there is no conceivable basis on which Ford and/or Hertz would have had any reason to preserve the vehicle in its post-accident condition.

For these reasons, the court will deny plaintiffs' motion for a negative inference instruction due to spoliation of evidence and to strike all of defendant's defenses based on lack of post-accident tests, observations and analysis of the allegedly spoliated vehicle.[5]

Ford has filed a motion for partial summary judgment and a motion for summary judgment. In the former motion, Ford states that while plaintiffs have alleged numerous defects in various aspects of the manufacture of the Explorer, the only experts they have designated to testify regarding alleged defects have discussed only two defects, related to handling and stability. Ford submits that without expert testimony on the remaining defect claims, plaintiffs cannot prove the essential elements of their claims, which entitles Ford to partial summary judgment. *See Hammond v. Coleman Co., Inc.,* 61 F.Supp.2d 533, 542 (S.D.Miss.1999) (holding that plaintiff's failure to offer admissible expert testimony regarding alleged design, manufacturing or warning defects precluded any recovery in a product liability action); *Henson v. Lowe's,* 2001 WL 1523846 (N.D.Miss.2001) (following *Hammond* and granting summary judgment when plaintiffs offered no expert testimony

on alleged design, manufacturing, warning or instruction defects).

In their response to this motion, plaintiffs list the defects they have alleged, as follows: (1) lack of crashworthiness; (2) suspension; (3) inadequate roof strength; (4) occupant restraint system defect; (5) faulty door latching and restraint system; and (6) rollover propensity. They note that the partial summary judgment motion is not addressed to the alleged suspension and rollover propensity defects, and they concede the motion as to the allegation of inadequate roof strength. However, plaintiffs maintain that their proof, including both circumstantial evidence of the failures of the seatbelt and door latch, is sufficient to create a triable issue on their allegations relating to the faulty occupant restraint system and door latching and restraint system and lack of crashworthiness of the subject vehicle.

In this vein, plaintiffs point out that Althea Davis, by her account and as evidenced by bruises on her shoulder following the accident, was wearing her seatbelt at the time of the accident, as was her regular habit; and also by her account, the doors to the vehicle were properly closed and locked. Despite this, she was ejected from the vehicle during the rollover sequence. Plaintiffs further point out that their expert, William Edwin Medcalf Jr., has submitted an affidavit in which he opines that since the door was found ajar after the accident and no one has indicated that it was opened by anyone on the scene, then the door more than likely came open during the rollover, "indicating either extraneous actuation of the lock mechanism or inability of the latch to properly restrain the door." He observes, in addition,

---

**5.** Ford has moved for sanctions based on plaintiffs' filing of what it characterizes as an "unfounded and frivolous spoliation motion." Although the court has concluded that the spoliation motion should be denied, the court does not consider that plaintiffs should be sanctioned for having filed the motion.

that Mrs. Davis's use of the seatbelt "did not prevent Mrs. Davis from being ejected from the Explorer at some time during the rollover event" as she was found pinned under the vehicle.[6]

■ The fact of the matter is, however, and as Ford correctly observes, Medcalf never states in this affidavit that the door latch system or occupant restraint system of the Explorer *was defective.* Rather, he simply recounts facts from the accident and surmises what could have happened with regard to the seatbelt and door, that is, both came unlatched. However, a door can come open on a vehicle in an accident sequence and a person can be ejected in an accident sequence without there being any defect in the automobile. To prevail, plaintiffs must prove that a defect existed; and to do that here, expert testimony which identifies *a defect* is essential but

lacking.[7] Accordingly, the court concludes that the motion for partial summary judgment should be granted.[8]

■ Ford's motion for summary judgment on the handling and suspension issues is grounded on plaintiffs' spoliation motion, and in particular, on what Ford terms plaintiffs' "admission" therein that their experts have never viewed or inspected the accident vehicle in its post-accident condition. Ford argues that by this admission, plaintiffs have essentially admitted that their experts do not have sufficient data on which to base reliable and accurate expert opinions, so that their expert's testimony is inadmissible. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 596, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 1176, 143 L.Ed.2d 238 (1999). Ford

6. Ford argues that the court should disregard Medcalf's affidavit, at least insofar as it relates to these defect issues, since the assertions therein are outside of his expert report and were submitted after plaintiffs' expert designation deadlines. The affidavit, however, for the reasons explained in the text, adds no substantive support to plaintiffs' position in response to the motion.

7. Relative to this motion, plaintiffs reiterate that they were unable to inspect and test the seatbelt and door latching mechanisms following the accident owing to Hertz's disposition of the vehicle and thus implicitly concede that they lack direct evidence to establish the specific nature of the defect in the occupant restraint system and door latch system. They maintain that there is nevertheless ample circumstantial evidence that the seatbelt malfunctioned (otherwise Mrs. Davis would not have been ejected from the vehicle), and that the door system failed inasmuch as the door came open during the rollover event, all of which suggests an overall lack of crashworthiness. In other words, plaintiffs insinuate that especially in view of "defendants'" spoliation of the evidence, they need not prove a specific defect, and that it is instead enough merely to show that something must have been defective, for otherwise Mrs. Davis would not have

been thrown from the vehicle. Their position is rejected. The court has concluded there was no spoliation, and plaintiffs cannot prove the existence of a defect at the time the vehicle left the manufacturer merely by showing that the seatbelt and the door somehow came unlatched or otherwise failed during the accident. They need expert proof that these systems were defective, and this, they obviously lack.

8. Ford further points out in its rebuttal that in any event, plaintiffs have not offered proof of a feasible alternative design, even though the Mississippi Products Liability Act explicitly requires that a party alleging a defective design in a products liability action must provide a "feasible design alternative... that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers." Miss.Code Ann. § 11–1–63(f)(ii).

Ford further notes that Medcalf has himself testified in other litigation, namely *Hill v. Toyota,* Civ. Action 88–53 (Super.Ct.Ala.), that he is not an expert in restraint systems *per se,* and thus has essentially conceded his lack of qualification to testify on these issues.

then concludes that without expert testimony to establish the existence of a defect, plaintiffs cannot succeed on their claims relating to defective handling and suspension. *See Hammond,* 61 F.Supp.2d at 542. This motion should be denied.

As indicated *supra,* it is not necessary for plaintiffs' experts to have viewed, inspected or tested the vehicle involved in this particular accident in order to reach conclusions and give opinions that the vehicle was defectively designed, for the design of the accident vehicle is presumably no different from every other 2000 Ford Explorer. Accordingly, plaintiffs' "admission" that their experts could not view, inspect or test the accident vehicle is hardly fatal to their claims relating to the alleged handling and suspension defect(s).

The final motion for consideration is Ford's motion to strike plaintiffs' experts William Medcalf and James Hannah based on plaintiffs' failure to provide deposition dates in violation of the case management order. This motion will be denied. Simply put, the court is not persuaded that the circumstances claimed by Ford justify the relief requested.[9]

Based on the foregoing, it is ordered that plaintiff's motion for a negative inference instruction and to strike Ford's defenses based on lack of post-accident tests, observations and analysis of the accident vehicle is denied; Ford's motion for partial summary judgment is granted; Ford's motion for summary judgment is denied; Ford's motion for sanctions is denied; and Ford's motion to strike plaintiffs' experts Medcalf and Hannah is denied.

9. Moreover, it does appear that the parties have now agreed upon a deposition date for these witnesses.